UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

BIO ENTERPRISES, INC. and KAY CASPERSON,

                      Plaintiffs,

        -against-

IDEAL HEALTH, INC.,

                      Defendant.

------------------------------------------------------------------X

07 Civ. 7049 (VM)

**ANSWER WITH AFFIRMATIVE DEFENSES AND <u>COUNTERCLAIMS</u>**

**ECF Case**
(Jury Trial Demanded)

      Defendant Ideal Health, Inc. ("Ideal Health") by its attorneys Moritt Hock Hamroff & Horowitz LLP, as and for its answer to the plaintiffs BIO Enterprises, Inc. ("BIO Enterprises") and Kay Casperson's ("Casperson") (collectively the "Plaintiffs") complaint dated August 7, 2007 (the "Complaint), and for its counterclaims against the Plaintiffs, alleges as follows:

      1.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the Complaint.

      2.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the Complaint.

      3.    Admits the allegations contained in paragraph 3 of the Complaint.

      4.    The allegations contained in paragraph 4 of the Complaint call for a conclusion of law to which no response is required and which is respectfully referred to the Court for a determination.

      5.    The allegations contained in paragraph 5 of the Complaint call for a conclusion of law to which no response is required and which is respectfully referred to the Court for a determination.

6. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of the Complaint.

7. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the Complaint.

8. Admits the allegations contained in paragraph 8 of the Complaint.

9. Admits that Ideal Health made certain representations to Casperson, as is contained in the Acquisition Agreement (the "Agreement") dated May 19, 2004, but Ideal Health denies the remainder of the allegations contained in paragraph 9 of the Complaint.

10. Admits that Ideal Health represented, through its then-President, Todd Stanwood ("Stanwood"), that thousands of sales people were ready to take the BIO Essentials product line on board, but denies the remainder of the allegations contained in paragraph 10 of the Complaint.

11. Denies the allegations contained in paragraph 11 of the Complaint.

12. Admits that Ideal Health and BIO Enterprises entered into the Agreement dated May 19, 2004, whereby Ideal Health acquired the BIO Essentials line of products and trademark but Ideal Health denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 12 of the Complaint.

13. Neither admits nor denies the allegations contained in paragraph 13 of the Complaint as it refers to the express terms of a document and all questions as to their content and meaning are referred to the Court.

14. Neither admits nor denies the allegations contained in paragraph 14 of the Complaint as it refers to the express terms of a document and all questions as to their content and meaning are referred to the Court.

15. Neither admits nor denies the allegations contained in paragraph 15 of the

Complaint as it refers to the express terms of a document and all questions as to their content and meaning are referred to the Court.

16. Admits the allegations contained in paragraph 16 of the Complaint.

17. Denies the allegations contained in paragraph 17 of the Complaint.

18. Denies the allegations contained in paragraph 18 of the Complaint.

19. Denies the allegations contained in paragraph 19 of the Complaint.

20. Denies the allegations contained in paragraph 20 of the Complaint.

21. Denies the allegations contained in paragraph 21 of the Complaint.

22. Denies the allegations contained in paragraph 22 of the Complaint.

23. Denies the allegations contained in paragraph 23 of the Complaint.

24. Denies the allegations contained in paragraph 24 of the Complaint.

## **Answering Count I**

25. Ideal Health repeats, reiterates and realleges each and every allegation contained in paragraphs number "1" through "24" herein, inclusive and with the same force and effect as though the same were fully set forth at length.

26. Denies the allegations contained in paragraph 26 of the Complaint.

27. Denies the allegations contained in paragraph 27 of the Complaint.

## **Answering Count II**

28. Ideal Health repeats, reiterates and realleges each and every allegation contained in paragraphs number "1" through "27" herein, inclusive and with the same force and effect as though the same were fully set forth at length.

29. The allegations contained in paragraph 29 of the Complaint call for a conclusion of law to which no response is required and which is respectfully referred to the Court for a

determination.

30. Denies the allegations contained in paragraph 30 of the Complaint.

31. Denies the allegations contained in paragraph 31 of the Complaint.

## Answering Count III

32. Ideal Health repeats, reiterates and realleges each and every allegation contained in paragraphs number "1" through "31" herein, inclusive and with the same force and effect as though the same were fully set forth at length.

33. Denies the allegations contained in paragraph 33 of the Complaint.

34. Denies the allegations contained in paragraph 34 of the Complaint.

35. Denies the allegations contained in paragraph 35 of the Complaint.

36. Denies the allegations contained in paragraph 36 of the Complaint.

37. Denies the allegations contained in paragraph 37 of the Complaint.

38. Denies the allegations contained in paragraph 38 of the Complaint.

## Answering Count IV

39. Ideal Health repeats, reiterates and realleges each and every allegation contained in paragraphs number "1" through "38" herein, inclusive and with the same force and effect as though the same were fully set forth at length.

40. Denies the allegations contained in paragraph 40 of the Complaint.

41. Denies the allegations contained in paragraph 41 of the Complaint.

## Answering Count V

42. Ideal Health repeats, reiterates and realleges each and every allegation contained in paragraphs number "1" through "41" herein, inclusive and with the same force and effect as though the same were fully set forth at length.

43. Denies the allegations contained in paragraph 43 of the Complaint.

44. Denies the allegations contained in paragraph 44 of the Complaint.

45. Denies the allegations contained in paragraph 45 of the Complaint.

### As and For a First Affirmative Defense

46. The complaint, in its entirety, and each cause of action contained therein, fails to state a cause of action.

### As and For a Second Affirmative Defense

47. Any failure of Ideal Health to perform under the Agreement is excused by the Plaintiffs' breach and/or anticipatory breach.

### As and For a Third Affirmative Defense

48. The Plaintiffs have failed to use available means to mitigate damages.

### As and For a Fourth Affirmative Defense

49. Ideal Health was fraudulently induced to enter into the Agreement.

### As and For a Fifth Affirmative Defense

50. Ideal Health paid all sums due under the Agreement.

### COUNTERCLAIMS

### Facts Common to All Counterclaims

51. On May 19, 2004 Ideal Health and BIO Enterprises entered into the Agreement, annexed to the Plaintiffs' complaint herein, in which Ideal Health acquired the "assets" of BIO Enterprises, as defined in Exhibit "A" of the Agreement.

52. Ideal Health had just completed the formulation of its own skin care line called Spana. Nonetheless, Casperson induced Ideal Health into acquiring the BIO Essentials product line by promising that based on her expertise, as well as her connection with Oprah Winfrey, she

would be able to help grow the BIO Essentials product line faster than Ideal Health could expect to grow its own.

53. To that end, as part of the Agreement, the Plaintiffs agreed to take on various responsibilities with respect to the development of the BIO Essentials name and product line, as is fully detailed in Exhibit "B" of the Agreement.

54. In turn, Casperson was paid monthly and Ideal Health took on various responsibilities in order to assist the Plaintiffs and the BIO Essentials product line.

55. Ideal Health reformulated the six (6) BIO Essentials products that the Plaintiffs brought to Ideal Health in order to meet the quality standards required for the Ideal Health product line.

56. Ideal Health then invested in two (2) more face care products, a body care line consisting of four (4) products and a hair care line consisting of four (4) products.

57. Ideal Health also completely redesigned all marketing materials, created a new BIO Essentials website, created retail sale scripts, recorded audios and wrote training guides to support the Plaintiffs' vision.

58. Ideal Health provided over $180,000 in marketing materials, a complete support resource staff, hired two outside marketing and creative services companies and had thousands of marketers who purchased and sold the BIO Essentials products to thousands of end line consumers.

59. Ideal Health gave Casperson decision making power over BIO Essentials and performed various other services to benefit the BIO Essentials product line and in furtherance of the BIO Essentials brand.

60. Ideal Health further supported BIO Essentials by flying one of the founders, Lou

DeCaprio, all over the country to promote the BIO Essentials program.

61. Ideal Health continuously sought Kay's approval on every aspect of the BIO Essentials product line.

62. Casperson committed to the launch date of each product line but failed to make timely decisions in order for Ideal Health to meet production schedules and product line launch deadlines.

63. Further, Casperson failed to sign off on packaging, label designs and multiple product container specifications causing delays and extra costs.

64. Casperson continuously ignored Ideal Health's staff when it needed her assistance to produce other supporting materials in a timely fashion.

65. The Plaintiffs did not have any patents on cosmetic lotions nor did they provide Ideal Health with any footage, sounds or scripts. Plaintiffs simply provided Ideal Health with a few marketing materials that were outdated and needed to be redesigned.

66. Casperson demanded changes to the Agreement almost immediately after it was executed.

67. On or about February 17, 2005, Ideal Health received correspondence from Casperson in which she demanded, in writing, material changes to the Agreement.  Furthermore, as was later learned by Ideal Health, Casperson shared her personal feelings with Ideal Health's sales force, refused to attend various marketing events and threatened to leave Ideal Health and open a competing business.

68.  Ideal Health continued to fulfill its obligations under the Agreement, including compensating Casperson, until such time that the Plaintiffs breached the Agreement, including refusing to comminicate with the corporate and sales staff.

69. When Casperson stopped participating in the business, sales of the BIO Essentials product line began to slide and are now only a small fraction of what they were when Casperson was actively involved with the product.

70. The Plaintiffs continuously attempted to thwart the efforts of Ideal Health to successfully market and sell the BIO Essentials product line and became destructive to its ultimate success in breach of their obligations under the Agreement.

71. Further, the Plaintiffs fraudulently and deceitfully induced Ideal Health into the Agreement with promises that they never had any intentions of keeping.

## First Counterclaim
(Breach of Contract)

72. Ideal Health repeats, reiterates and realleges each and every allegation contained in paragraphs number "51" through "71" herein, inclusive and with the same force and effect as though the same were fully set forth at length.

73. Ideal Health and BIO Enterprises entered into the Agreement, in which Ideal Health acquired the assets of BIO Essentials and the parties, including BIO Enterprises' President, Casperson, undertook various obligations.

74. The Plaintiffs failed to fulfill their obligations, in breach of the Agreement, by refusing to assist in product development, manufacturing, packaging, advertising and marketing, production, sales, and refusing to attend meetings or communicate with corporate, sales and marketing staff.

75. Furthermore, the Plaintiffs did not provide Ideal Health with any patents, footage, sounds or scripts, in breach of the Agreement.

76. As a result of the Plaintiffs' breach, Ideal Health has incurred damages in an amount to be determined at trial, but believed to be in excess of $500,000.00.

**Second Counterclaim**
(Anticipatory Breach of Contract)

77. Ideal Health repeats, reiterates and realleges each and every allegation contained in paragraphs number "51" through "76" herein, inclusive and with the same force and effect as though the same were fully set forth at length.

78. Almost immediately after the parties entered into the Agreement, the Plaintiffs' demanded amendments to the agreement and threatened not to fulfill any of its obligations thereunder. Casperson, as President of BIO Enterprises, became disruptive of the progression of the BIO Essentials brand by sharing her personal feelings with the sales staff, telling members of the sales and corporate staff that she refused to attend various marketing events, and threatening to start her own, competing business. Casperson's actions had an extremely negative impact on the mindset of the sales force, causing a decrease in sales.

79. Casperson and BIO Enterprises repudiated and anticipatorily breached the Agreement by threatening that they would not fulfill their obligations thereunder.

80. As a result of the Plaintiffs' repudiation and breach, Ideal Health has incurred damages in an amount to be determined at trial, but believed to be in excess of $500,000.00.

**Third Counterclaim**
(Breach of Implied Covenant of Good Faith and Fair Dealing)

81. Ideal Health repeats, reiterates and realleges each and every allegation contained in paragraphs number "51" through "80" herein, inclusive and with the same force and effect as though the same were fully set forth at length.

82. The Agreement contained an implied covenant of good faith and fair dealing.

83. The Plaintiffs, through their actions as described herein, have breached the implied covenant of good faith and fair dealing in the Agreement.

84.    As a result of the Plaintiffs' breach, Ideal Health has incurred damages in an amount to be determined at trial, but believed to be in excess of $500,000.00.

### Fourth Counterclaim
(Fraud)

85.    Ideal Health repeats, reiterates and realleges each and every allegation contained in paragraphs number "51" through "84" herein, inclusive and with the same force and effect as though the same were fully set forth at length.

86.    In order to induce Ideal Health into entering into the Agreement, Casperson, on numerous occasions, promised and represented to Todd Stanwood ("Stanwood"), President of Ideal Health, that she would use her contacts with Oprah Winfrey to further the BIO Essentials product line but never did.

87.    Casperson also represented to Stanwood and other executives at Ideal Health that she had numerous contacts in the spa industry and that BIO Essentials products were already selling in spas around the country. Casperson promised to introduce Ideal Health to those contacts and turn over her existing spa clients to them.

88.    Casperson knew the above representations and promises were untrue and only made said statements for the purpose of inducing Ideal Health into entering into the Agreement.

89.    Ideal Health relied on Casperson's promises and representations in entering into the Agreement.

90.    As a result of the Casperson's fraud, Ideal Health has incurred damages in an amount to be determined at trial, but believed to be in excess of $500,000.00.

WHEREFORE, defendant Ideal Health, Inc. respectfully requests a judgment, as against the plaintiffs BIO Enterprises, Inc. and Kay Casperson, jointly and severally, (a) denying the Plaintiffs' claims in their entirety, (b) on the First Counterclaim an amount to be determined at

trial but believed to be in excess of $500,000.00, (b) on the Second Counterclaim an amount to be determined at trial but believed to be in excess of $500,000.00, (c) on the Third Counterclaim an amount to be determined at trial but believed to be in excess of $500,000.00, (d) on the Fourth Counterclaim an amount to be determined at trial but believed to be in excess of $500,000.00 (e) costs and disbursements, and (f) such other and further relief as may be just and equitable.

Defendant hereby demands a trial by jury on all claims and counterclaims asserted in this action.

Dated: Garden City, New York
       November 1, 2007

                                        MORITT HOCK HAMROFF & HOROWITZ LLP
                                        Attorneys for Plaintiff

                                        By:   /s/ Joshua B. Summers
                                                Joshua B. Summers, Esq. (JBS4179)
                                        400 Garden City Plaza
                                        Garden City, New York 11530
                                        (516) 873-2000