LAW OFFICES OF

# CAROLE R. BERNSTEIN

41 MAPLE AVENUE NORTH
WESTPORT, CONNECTICUT 06880

CAROLE R. BERNSTEIN*

*NEW YORK AND CONNECTICUT
▲ NEW YORK, CONNECTICUT AND NEW JERSEY

TELEPHONE (203) 255-8698
FACSIMILE (203) 259-4735

REDDING, CT OFFICE

LEWIS S. GOLDBERG▲
OF COUNSEL

56 DAYTON ROAD
REDDING, CT 06896
TELEPHONE (203) 938-2105
FACSIMILE (203) 938-2106

February 4, 2008

*Via ECF and Federal Express*

The Honorable Victor Marrero
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
Room 660
New York, New York 10007

    Re: <u>Bio Enterprises, Inc. et al. v. Ideal Health, Inc. 07 Civ. 7049 (VM)</u>

Dear Judge Marrero:

Pursuant to Your Honor's Notice dated January 17, 2008, counsel for the parties respectfully submits this joint letter.

### Brief Description of the Case

The issues in the instant action relate to an agreement entered into by and between Plaintiffs Bio Enterprises and Kay Casperson, and Defendant Ideal Health. Bio Enterprises is a company that manufactures and markets high-end personal care spa products under the trade name BIO Essentials. Kay Casperson, Bio Enterprises' President, founded the company in 1995. Ideal Health is a company that markets nutritional supplements though a network of distributors.

#### The Acquisition Agreement

On or about May 19, 2004, Bio Essentials, Ideal Health and Bio Enterprises entered into an agreement dated May 19, 2004 (the "Acquisition Agreement") whereby Ideal Health acquired the Bio Essentials line of products and trademark. Pursuant to the terms of the Acquisition Agreement, Bio Enterprises agreed to sell to Ideal Health all of its rights in (i) the trademark "Bio Essentials;" (ii) any patents on cosmetic lotions; (iii) all footage of events relating to Bio Essentials cosmetics lotions which have been filmed,

The Honorable Victor Marrero
February 4, 2008
<u>Page Two</u>

including pictures and images, sounds, scripts; and (iv) any and all related intangible property rights of Bio Essentials relating to its business.

In exchange for the sale of the assets of Bio Essentials to Ideal Health, Ideal Health agreed to compensate Ms. Casperson as follows: (i) a minimum guaranteed payment of $5,000.00 per month commencing on July 1, 2004; (ii) in the event that the sum of the monthly sales royalty, the monthly membership fee royal and the monthly sales aids royalty as set forth in the Acquisition Agreement amounts to less than $5,000 in any calendar month, Ideal Health was to pay Ms. Casperson an amount which when combined with the monthly sales royalty, the monthly membership fee royalty and the monthly sales and royalty equals $5,000.00; (iii) certain sales royalties as more fully set forth in the agreement; (iv) profits resulting from the sale of all Bio Essentials Sales Training Aids; (v) payment of Ms. Casperson's reasonable business expenses including air, ground transportation, telephone, food and lodging and (vi) payment of Ms. Casperson's family insurance policy beginning in June 19, 2004.

<u>Plaintiffs' Allegations</u>

Plaintiffs' allege that, not long after Plaintiffs signed the Acquisition Agreement, Ideal Health breached the Acquisition Agreement in the following manner: (i) despite Ideal Health's representation to Ms. Casperson that it would be doing television infomercials, marketing materials, providing adequate support staff and providing to Ms. Casperson decision making power over the Bio Essentials products, Ideal Health embarked on a campaign to decimate the Bio Essentials brand and philosophy by, among other things, focusing entirely on recruiting and inventory loading with a compensation plan that only rewarded people who continue to recruit along with inventory loading; (ii) manufacturing certain Bio Essentials packaging without Ms. Casperson's input or approval; (iii) designing a website and catalog featuring the Bio Essentials line of products without obtaining Ms. Casperson's approval; (iii) manufacturing certain body and hair care products, also without Ms. Casperson' approval; and (iv) failing to make such payments to Ms. Casperson as set forth in the Acquisition Agreement such as (a) failing to pay plaintiffs royalties for March 2006 through the present (at $5,000.00 guaranteed per month); and (b) failing to pay plaintiffs the sum of at least $55,906.28 representing certain expenses to be paid by Ideal Health. Finally, Ideal Health has failed to pay to Plaintiffs (i) 50% of all sales aids sold since May 2004 in an amount to be determined at trial and (ii) 4% of all memberships sold since May 2004, also in an amount to be determined at trial.

The Plaintiffs' Complaint seeks damages for breach of contract, breach of implied covenant of good faith and fair dealing; conversion; unjust enrichment and account stated.

The Honorable Victor Marrero
February 4, 2008
Page Three

Defendant's Allegations

    The Defendant denies the material allegations contained in Plaintiffs' complaint and brief summary herein and asserts its own counterclaims, as contained in its Answer with Counterclaims, and as briefly set forth herein.

    Plaintiffs induced Ideal Health into acquiring the BIO Essentials product line by making false promises about her products and contacts in the industry, and, therefore, failed to help grow the BIO Essential product line and brand as promised. Further, almost immediately after signing the Acquisition Agreement, Casperson demanded material changes thereto. Plaintiffs had decision-making power over BIO Essentials. Ideal Health continuously sought Casperson's approval on every aspect of the BIO Essentials product line. While Casperson committed to the launch date of each product line, she failed to make timely decisions, thus preventing Ideal Health from meeting production schedules and deadlines, and caused further delays by failing to sign off on packaging, label designs and product container specifications. Plaintiffs failed to assist in product development, manufacturing, packaging, advertising and marketing, production, sales and refused to attend meeting or communicate with corporate, sales and marketing staff. Plaintiffs were in further breach of the Acquisition Agreement in that they failed to provide Ideal Health with any patents, footage, sounds or scripts. Plaintiffs' actions caused Ideal Health to incur various damages.

    In addition, Plaintiffs agreed to take on various responsibilities with respect to the development of the BIO Essential product line, as detailed in the Acquisition Agreement, and Ideal Health, in turn, took on various responsibilities themselves. In furtherance of the Acquisition Agreement, Ideal Health attempted to work with the Plaintiffs to develop the BIO Essentials products and brand. Specifically, Ideal Health reformulated the six (6) existing BIO Essentials products, and invested in two (2) more face care products, as well as, a body care line consisting of four (4) products and a hair care line consisting of four (4) products. Ideal Health redesigned marketing materials, created a new BIO Essentials website, retail scripts, and recorded audios and wrote training guides to support the Plaintiffs' vision. Ideal Health, among other things, also provided over $180,000.00 in marketing materials, a complete support resource staff, hired outside marketing and creative services companies and had thousands of marketers who purchased and sold the BIO Essentials products to thousands of end line consumers.

    The Defendant's counterclaims seeks damages for breach of contract, anticipatory breach of contract, breach of implied covenant of good faith and fair dealing, and fraud. Any failure by Ideal Health to perform under the Acquisition Agreement is excused by the Plaintiffs' own breach.

The Honorable Victor Marrero
February 4, 2008
Page Four

**Contemplated Motions**

At this time, the parties do not anticipate the filing of dispositive motions, though this may change after the conclusion of discovery.

**Prospects for Settlement**

Counsel for the parties have been engaging in good faith settlement discussions.

Plaintiffs do not consent to proceed before a Magistrate Judge.

Respectfully submitted,

LAW OFFICES OF
CAROLE R. BERNSTEIN
Attorney for Plaintiff/
Counterclaim-Defendant

By: /s/ Carole R. Bernstein
Carole R. Bernstein (CB-8343)
41 Maple Avenue North
Westport, Connecticut
(203) 255-8698

MORITT HOCK HAMROFF &
HOROWITZ LLP
Attorneys for Defendant/
Counterclaim-Plaintiff

By: /s/ Joshua B. Summers
Joshua B. Summers, Esq. (JBS4179)
400 Garden City Plaza
Garden City, New York 11530
(516) 873-2000